FILED

2026 SEP -1 AM 9:46

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

**AMIN I. SALMAN,**

Plaintiff,

v.

**TENNESSEE DEPARTMENT OF TRANSPORTATION; and**

**WILL REID, in his official capacity as Commissioner of the Tennessee Department of Transportation,**

Defendants.

Case No. 3:26-cv-01247

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETALIATION;**
**JURY DEMAND**

Plaintiff Amin I. Salman, proceeding pro se, brings this action against the Tennessee Department of Transportation ("TDOT") and Will Reid, in his official capacity as TDOT Commissioner, and alleges as follows:

## PARTIES

1. Plaintiff Amin I. Salman is an adult resident of Davidson County, Tennessee. He is of Palestinian national origin and was over forty years old at all times relevant to this action.

2. Plaintiff's mailing address, telephone number, and email address are listed in the signature block below.

3. Defendant TDOT is a department and agency of the State of Tennessee and was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964.

4. Defendant Will Reid is the Commissioner of TDOT. He is sued only in his official capacity and only for prospective equitable relief on Plaintiff's age-discrimination claim, including reinstatement and correction of ongoing employment records.

## JURISDICTION AND VENUE

5. This Court has federal-question jurisdiction under 28 U.S.C. sections 1331 and 1343 because Plaintiff asserts claims under Title VII, 42 U.S.C. sections 2000e through 2000e-17, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. sections 621 through 634.

6. This Court may grant legal and equitable relief under 42 U.S.C. section 2000e-5(g), 29 U.S.C. section 626, and the doctrine permitting prospective federal relief against a state official acting in an official capacity.

7. Venue is proper in this District under 28 U.S.C. section 1391(b) and 42 U.S.C. section 2000e-5(f)(3) because Plaintiff worked in Davidson County, TDOT maintains offices here, and the events giving rise to these claims occurred principally in Nashville, Tennessee.

## ADMINISTRATIVE EXHAUSTION

8. Plaintiff filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 494-2025-04264, alleging discrimination based on national origin and age, retaliation, harassment, discipline, a lowered performance rating, and forced retirement.

9. The EEOC issued its Notice of Right to Sue on 06-10-2026. Plaintiff received the notice on 06-10-2026. A copy of the notice should be attached as Exhibit A.

10. This action is filed within ninety days after Plaintiff received the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

11. TDOT hired Plaintiff on February 2, 1998. He served TDOT for more than twenty-seven years and most recently held the position of Statewide Transportation Engineer in the Traffic Design Division.

12. Before the events at issue, Plaintiff had a long record of public service and satisfactory performance. His performance ratings included 4 out of 5 in 2024. After management imposed a 2 out of 5 rating in March 2025, Plaintiff again received a 4 out of 5 rating in May 2025, which Plaintiff alleges is inconsistent with TDOT's claim that his performance had materially deteriorated.

13. In March 2024, Plaintiff was assigned to a newly formed unit under manager Scott Pate. Andrew Barlow served as a division director, and TDOT Human Resources participated in the employment actions described below.

14. On December 11, 2024, Pate issued Plaintiff an oral warning based on a collection of workplace incidents that Plaintiff regarded as minor, selectively characterized, or not disciplinary offenses.

15. The cited incidents included Plaintiff's departure from a voluntary Thanksgiving gathering and his absence from an all-staff gathering that TDOT itself acknowledged had not expressly been described as mandatory. Plaintiff alleges that management used these incidents to begin building a paper record against him.

16. During the December 11, 2024 confrontation, Pate told Plaintiff that he had an attitude, that nobody wanted to work with him, and that he needed to leave. Plaintiff immediately reported the statement to TDOT Human Resources in an email titled "My manager is asking me to leave."

17. Plaintiff further alleges that Pate told him that he was too old and should retire. TDOT denies that statement. The statement and surrounding pressure are disputed facts for trial.

18. On February 26, 2025, Plaintiff complained to TDOT's Civil Rights Division that management was pressuring him to retire and discriminating against him in discipline, harassment, and his Individual Performance Plan. This was protected opposition to discrimination.

19. Only five days later, on March 3, 2025, TDOT issued Plaintiff a written warning. On March 5, 2025, TDOT finalized a below-expectations performance evaluation. Plaintiff alleges that the close timing, the sudden departure from his prior record, and the selective use of minor incidents show discriminatory and retaliatory motive.

20. The written warning also criticized Plaintiff's work on a Humphreys County lighting project and a January 2025 meeting. Plaintiff disputes TDOT's characterization of these matters and alleges that management escalated ordinary professional disagreements into accusations of misconduct.

21. TDOT Human Resources informed Plaintiff that management was creating or following a progressive disciplinary record and advised him that he should retire. Plaintiff understood that continued employment would bring escalating discipline and possible termination.

22. Under this pressure, Plaintiff sent an email on March 7, 2025 stating that he intended to retire on July 31, 2025. TDOT processed the retirement submission on March 17, 2025 and refused to permit Plaintiff to withdraw or correct it without management approval.

23. TDOT later acknowledged that it advised Plaintiff to retire at the end of the State's fiscal year instead of July 31, 2025. TDOT therefore made the retirement effective June 30, 2025, one month earlier than the date Plaintiff had stated.

24. On or about June 20, 2025, TDOT Human Resources convened a meeting involving personnel from multiple divisions concerning Plaintiff's departure. Plaintiff was directed out of active employment before the June 30 effective retirement date, and TDOT personnel were not uniformly or timely informed of his status.

25. TDOT's separation notice states that Plaintiff's final date of employment was June 30, 2025 and describes the separation as retirement. Plaintiff alleges that the retirement was not voluntary but was the intended result of age-based pressure, retaliation, and intolerable employment conditions created by management.

26. Plaintiff alleges that TDOT treated his workplace conduct more harshly than comparable conduct by younger and non-Palestinian employees. Before filing, Plaintiff will identify any known comparators, national-origin comments, or specific examples here: Arab

## HEALTH-INSURANCE AND MEDICARE CONSEQUENCES

27. After the forced retirement, TDOT Human Resources completed CMS Form L564, Request for Employment Information, for Plaintiff's Medicare enrollment. The form was signed by TDOT Human Resources on July 15, 2025.

28. On the face of that form, the ending month for Plaintiff's employer health coverage appears first to have been entered as August 2025, then crossed out and changed by TDOT Human Resources to "correction 07/2025."

29. Based on the original information, Medicare issued Plaintiff a card showing coverage effective September 1, 2025. TDOT's later correction meant that Plaintiff's state coverage ended in July 2025, leaving him without health-insurance coverage during August 2025.

30. On August 20, 2025, Plaintiff contacted Medicare. Medicare personnel advised him that attempting to change the effective date could interfere with the card already issued and delay a replacement. When Plaintiff explained that he needed diabetes injections, Medicare advised him to request medication samples from his physician for the remaining days before September 1, 2025.



Case 3:26-cv-01247 Document 1 Filed 09/01/26 Page 5 of 8 PageID #: 5

31. Plaintiff alleges these insurance consequences as damages flowing from TDOT's accelerated and poorly communicated separation and subsequent HR correction. Plaintiff does not assert a separate Medicare cause of action in this Complaint.

## COUNT I - TITLE VII NATIONAL-ORIGIN DISCRIMINATION AGAINST TDOT

32. Plaintiff incorporates the preceding paragraphs as though fully stated here.

33. Plaintiff is Palestinian and therefore belongs to a class protected from national-origin discrimination by Title VII.

34. Plaintiff was qualified for his position, as shown by more than twenty-seven years of service and his performance history.

35. TDOT subjected Plaintiff to adverse actions, including selective discipline, a lowered performance rating, pressure to retire, refusal to allow withdrawal or correction of the retirement submission, removal from active work, and constructive discharge or forced retirement.

36. Plaintiff alleges that his national origin was a motivating factor in TDOT's treatment of him and that TDOT's stated explanations were pretextual. Plaintiff relies on the entire sequence of selective enforcement, disparate treatment, shifting characterizations, and other evidence to be developed through discovery.

37. As a direct and proximate result, Plaintiff suffered lost wages and benefits, emotional distress, reputational injury, and other compensable harm.

## COUNT II - TITLE VII RETALIATION AGAINST TDOT

38. Plaintiff incorporates the preceding paragraphs as though fully stated here.

39. Plaintiff engaged in protected activity when he reported discriminatory pressure and discipline to TDOT Human Resources and, on February 26, 2025, to TDOT's Civil Rights Division.

40. TDOT knew of Plaintiff's protected complaints.

41. Within days of the February 26 complaint, TDOT issued the March 3 written warning and finalized the March 5 below-expectations evaluation. TDOT thereafter maintained the retirement submission, moved Plaintiff's departure from July 31 to June 30, removed him from active work, and refused to permit him to remain employed.

42. The temporal proximity, escalation after the protected complaint, departure from Plaintiff's long performance history, and pressure to retire plausibly show that TDOT would not have taken the same actions but for Plaintiff's protected opposition to discrimination.

43. TDOT's retaliation caused Plaintiff lost wages and benefits, emotional distress, reputational injury, and other compensable harm.

## COUNT III - ADEA AGE DISCRIMINATION; PROSPECTIVE RELIEF AGAINST COMMISSIONER REID

44. Plaintiff incorporates the preceding paragraphs as though fully stated here.

45. Plaintiff was over forty years old and protected by the ADEA.

46. Plaintiff alleges direct and circumstantial evidence of age discrimination, including the statement that he was too old and should retire, the sustained pressure to retire, the accelerated retirement date, and TDOT's refusal to allow him to remain employed.

47. But for Plaintiff's age, Defendants would not have forced or constructively caused his retirement.

48. The effects of the age discrimination continue through Plaintiff's separation, employment records, lost position, and lost benefits. Commissioner Reid has official authority to provide prospective relief, including reinstatement, expungement or correction of employment records, and an order preventing continuing age discrimination.

49. Under this Count, Plaintiff seeks only prospective equitable relief against Commissioner Reid in his official capacity. Plaintiff does not seek ADEA monetary damages from TDOT or the State of Tennessee in this federal action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

A. Declare that TDOT violated Title VII by discriminating against Plaintiff because of national origin and by retaliating against him for protected activity;
B. Declare that the ongoing effects of the forced retirement violate the ADEA and order prospective relief against Commissioner Reid in his official capacity;
C. Order Plaintiff reinstated to his former position or a substantially equivalent position, with appropriate seniority and benefits;
D. Order TDOT to remove or correct the challenged warnings, performance rating, separation characterization, and other related records;
E. Award back pay, lost benefits, pension or retirement losses, and prejudgment interest to the extent permitted by Title VII;
F. Award front pay if reinstatement is not feasible;
G. Award compensatory damages under Title VII for emotional distress, inconvenience, reputational harm, and other nonpecuniary losses, subject to applicable statutory limits;
H. Award Plaintiff's recoverable costs and any attorney's fees later incurred or otherwise permitted by law;
I. Grant appropriate injunctive relief preventing further discrimination or retaliation; and
J. Grant any other legal or equitable relief the Court considers just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues for which a jury trial is available.

Respectfully submitted,

Amin Salman

Amin I. Salman, Plaintiff Pro Se
7485 Harness Drive
Nashville, TN 37221
615-474-2974
aminsalman@hotmail.com

Date: 09-01-26